38

AO 242 (12/11) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

# UNITED STATES DISTRICT COURT

for the

Eastern District of Michigan

|  |  |
|---|---|
| James C. McKee<br>_Petitioner_<br><br>v.<br><br>Eric Rardin (Warden)<br>_Respondent_<br>_(name of warden or authorized person having custody of petitioner)_ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case: 2:24-cv-11154
Judge: Hood, Denise Page
MJ: Morris, Patricia T.
Filed: 05-01-2024
HC MCKEE VS RARDIN (DP)

## PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241

### Personal Information

1.  (a) Your full name:  James C. McKee
    (b) Other names you have used:

2.  Place of confinement:
    (a) Name of institution:  Federal Correctional Institution, Milan
    (b) Address:  P.O. Box 1000
        Milan, MI 48160
    (c) Your identification number:  31679-171

3.  Are you currently being held on orders by:
    ☒ Federal authorities    ☐ State authorities    ☐ Other - explain:

4.  Are you currently:
    ☐ A pretrial detainee (waiting for trial on criminal charges)
    ☒ Serving a sentence (incarceration, parole, probation, etc.) after having been convicted of a crime
        If you are currently serving a sentence, provide:
        (a) Name and location of court that sentenced you:  United States Federal
         Court, South Carolina
        (b) Docket number of criminal case:  4:16-CR-00324-RBH
        (c) Date of sentencing:  12-14-2017
    ☐ Being held on an immigration charge
    ☐ Other _(explain)_:

AO 242 (12/11)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

## Decision or Action You Are Challenging

5.   What are you challenging in this petition:

☒ How your sentence is being carried out, calculated, or credited by prison or parole authorities (for example, revocation or calculation of good time credits)

❏ Pretrial detention

❏ Immigration detention

❏ Detainer

❏ The validity of your conviction or sentence as imposed (for example, sentence beyond the statutory maximum or improperly calculated under the sentencing guidelines)

❏ Disciplinary proceedings

❏ Other (explain): _____

_____

_____

6.   Provide more information about the decision or action you are challenging:

(a) Name and location of the agency or court:   Bureau of Prisons, Central Office

_____

(b) Docket number, case number, or opinion number: Remedy No. 118306-A1

(c) Decision or action you are challenging (for disciplinary proceedings, specify the penalties imposed):

I am challenging the application and calculation of Federal Time Credits pursuant to the First Step Act and Program Statement 5410.01.

(d) Date of the decision or action:   March 18, 2024

### Your Earlier Challenges of the Decision or Action

7.   **First appeal**

Did you appeal the decision, file a grievance, or seek an administrative remedy?

☒ Yes          ❏ No

(a) If "Yes," provide:

(1) Name of the authority, agency, or court:  Warden Eric Rardin, FCI Milan (BOP)

(2) Date of filing:  November 8, 2023

(3) Docket number, case number, or opinion number:   1183806-F1

(4) Result:   Denied

(5) Date of result:  December 14, 2023

(6) Issues raised:  My total RRC submission does not accurately reflect the amount of Federal Time Credits (FTCs) earned along with the Second Chance Act (SCA) recommendation.

_____

AO 242 (12/11) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

_____

_____

_____

     (b) If you answered "No," explain why you did not appeal: _____

_____

_____

8.    **Second appeal**

    After the first appeal, did you file a second appeal to a higher authority, agency, or court?

    ☒ Yes        ☐ No

    (a) If "Yes," provide:

        (1) Name of the authority, agency, or court: Andre Matevousian, Regional Director

        North Central Regional Office (FBOP)

        (2) Date of filing: December 27, 2023

        (3) Docket number, case number, or opinion number: 1183806-R1

        (4) Result: Denied

        (5) Date of result: February 12, 2024

        (6) Issues raised: The re-entry date returned does not reflect the

    additional FTCs that I have earned since my RRC submission.

    My FSA conditional Release Date (PRD) was not considered

    when I was submitted for a proper re-entry date.

_____

_____

_____

    (b) If you answered "No," explain why you did not file a second appeal: _____

_____

_____

9.    **Third appeal**

    After the second appeal, did you file a third appeal to a higher authority, agency, or court?

    ☒ Yes        ☐ No

    (a) If "Yes," provide:

        (1) Name of the authority, agency, or court: Office of the General Counsel

        (FBOP)

        (2) Date of filing: March 5, 2024

        (3) Docket number, case number, or opinion number: 1183806-A1

        (4) Result: Denied

        (5) Date of result: March 18, 2024

        (6) Issues raised: I have earned 270 FTCs as of filing the BP-11 plus an

    additional 105 FTCs up to the date of transfer to RRC placement. This

    total amount alone is greater than the just over 6 months of RRC time

AO 242 (12/11)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

I received. Nothing precludes me from being awarded SCA time in addition to earned FTCs, yet the BOP is ignoring the plain language of the First Step Act and Program Statement 5410.01.

(b) If you answered "No," explain why you did not file a third appeal: _____

_____

10.   **Motion under 28 U.S.C. § 2255**

In this petition, are you challenging the validity of your conviction or sentence as imposed?

☐ Yes            ☒ No

If "Yes," answer the following:

(a)     Have you already filed a motion under 28 U.S.C. § 2255 that challenged this conviction or sentence?

☐ Yes            ☐ No

If "Yes," provide:

(1)  Name of court: _____

(2)  Case number: _____

(3)  Date of filing: _____

(4)  Result: _____

(5)  Date of result: _____

(6)  Issues raised: _____

_____

_____

_____

_____

(b)     Have you ever filed a motion in a United States Court of Appeals under 28 U.S.C. § 2244(b)(3)(A), seeking permission to file a second or successive Section 2255 motion to challenge this conviction or sentence?

☐ Yes            ☐ No

If "Yes," provide:

(1)  Name of court: _____

(2)  Case number: _____

(3)  Date of filing: _____

(4)  Result: _____

(5)  Date of result: _____

(6)  Issues raised: _____

_____

_____

AO 242 (12/11) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

_____

_____

_____

_____

(c)   Explain why the remedy under 28 U.S.C. § 2255 is inadequate or ineffective to challenge your
conviction or sentence: _____

_____

_____

_____

_____

_____

_____

11.   **Appeals of immigration proceedings**

Does this case concern immigration proceedings?

☐ Yes              ☒ No

If "Yes," provide:

(a)   Date you were taken into immigration custody: _____

(b)   Date of the removal or reinstatement order: _____

(c)   Did you file an appeal with the Board of Immigration Appeals?

☐ Yes              ☐ No

If "Yes," provide:

(1) Date of filing: _____

(2) Case number: _____

(3) Result: _____

(4) Date of result: _____

(5) Issues raised: _____

_____

_____

_____

_____

_____

(d)   Did you appeal the decision to the United States Court of Appeals?

☐ Yes              ☐ No

If "Yes," provide:

(1) Name of court: _____

(2) Date of filing: _____

(3) Case number: _____

AO 242 (12/11) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

(4) Result: _____

(5) Date of result: _____

(6) Issues raised: _____

_____

_____

_____

_____

_____

_____

12.    **Other appeals**

Other than the appeals you listed above, have you filed any other petition, application, or motion about the issues raised in this petition?

☐ Yes          ☒ No

If "Yes," provide:

(a) Kind of petition, motion, or application: _____

(b) Name of the authority, agency, or court: _____

_____

(c) Date of filing: _____

(d) Docket number, case number, or opinion number: _____

(e) Result: _____

(f) Date of result: _____

(g) Issues raised: _____

_____

_____

_____

_____

_____

_____

### Grounds for Your Challenge in This Petition

13.    State every ground (reason) that supports your claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

**GROUND ONE:** My situation is a direct result of the BOP withholding and failing to implement the FSA Conditional Projected Release Date (PRD) and Earliest Prerelease Placement Date calculations. Because of this, I am unable to achieve the maximum award that I have earned through the First Step Act and my transfer to prerelease custody has been significantly delayed.

AO 242 (12/11)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

(a) Supporting facts *(Be brief.  Do not cite cases or law.)*:

The November 18, 2022 program statement (5410.01) along with other materials, including the First Step Act, supports my stance of a correct application of FTCs to transfer to prerelease custody.

(b) Did you present Ground One in all appeals that were available to you?

☒ Yes          ☐ No

GROUND TWO:  The total RRC submission is to include FTCs earned, projected -to-be earned and Second Chance Act (SCA) recommendation. This total is greater than the amount of time I have remaining on my sentence.

(a) Supporting facts *(Be brief.  Do not cite cases or law.)*:

By remaining in earning status until the end of my sentence, I stand to earn 180 FTCs that I do not stand to benefit from. The BOP has effectively rendered these credits to have no value.

(b) Did you present Ground Two in all appeals that were available to you?

☒ Yes          ☐ No

GROUND THREE: _____

(a) Supporting facts *(Be brief.  Do not cite cases or law.)*:

(b) Did you present Ground Three in all appeals that were available to you?

☐ Yes          ☐ No

AO 242 (12/11)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

**GROUND FOUR:** _____

_____

_____

_____

(a)  Supporting facts *(Be brief.  Do not cite cases or law.)*:

_____

_____

_____

_____

_____

_____

_____

(b)  Did you present Ground Four in all appeals that were available to you?

☐ Yes          ☐ No

14.     If there are any grounds that you did not present in all appeals that were available to you, explain why you did
        not: _____

_____

_____

_____

### Request for Relief

15.  State exactly what you want the court to do:  Request the Court to determine the correct and
accurate FSA conditional Projected Release Date and Earliest Prerelease
Placement Date as stated in Program Statement 5410.01. Direct the BOP to apply
said calculations to Petitioner's prerelease custody period, resulting in the
maximum benefit allowed by the First Step Act.

AO 242 (12/11)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

## Declaration Under Penalty Of Perjury

If you are incarcerated, on what date did you place this petition in the prison mail system:

4-28-24

I declare under penalty of perjury that I am the petitioner, I have read this petition or had it read to me, and the information in this petition is true and correct.  I understand that a false statement of a material fact may serve as the basis for prosecution for perjury.

Date: 4-28-24

_James Mckee_
Signature of Petitioner

_____
Signature of Attorney or other authorized person, if any

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

JAMES C. MCKEE,
                    Petitioner,


v.                                                          CASE NO.


ERIC RARDIN, WARDEN,
FEDERAL BUREAU OF PRISONS
                    Respondent.
_____/


## MEMORANDUM OF LAW AND FACT IN SUPPORT OF PETITION FOR
## WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241

NOW COMES, James C. McKee, Petitioner, pro se, and respectfully moves this Court to grant his Writ of Habeas Corpus under 28 U.S.C. § 2241. Petitioner moves the Court to issue the Writ directing the Respondent to recalculate and apply Federal Time Credits (FTC) accurately and correctly to Petitioner's prerelease custody period in accordance with the First Step Act (FSA) and Bureau of Prisons (BOP) policy. A Writ is the appropriate remedy for this matter.

1

## **INTRODUCTION**

The First Step Act was signed into law on December 21, 2018. It is perhaps the most sweeping Criminal Justice Reform bill in history. The vision of the bill was to give incarcerated individuals the incentive to better themselves through participating in recommended Evidence Based Recidivism Reduction (EBRR) programs in return for earning Federal Time Credits (FTC) towards sentence reduction and increased the time in Residential Reentry Centers and/or Home Confinement (RRC/HC). The law provided a limit of 365 FTCs to be applied to sentence reduction and stated that there is no limit to the number of FTCs that can be earned and applied towards RRC/HC (18 U.S.C. § 3624(g)(10)) as long as the time earned equaled the time remaining on an inmate's sentence.

Petitioner was sentenced on December 14, 2017 to a term of 132 months for a FSA eligible criminal statute under 18 U.S.C. 3632 (d)(4)(D). Petitioner qualifies for and has earned the allowable 365 FTCs toward early transfer to supervised release, has a qualifying PATTERN score of "low" per 18 U.S.C. 3624(g)(1)(B), and remained in earning status for FTCs throughout his term of incarceration, other than while in transit, by maintaining clear conduct and participating in EBRRs.

Petitioner was submitted for RRC/HC placement on August 7, 2023 with a requested placement date of September 22, 2023. At the time of referral, the total amount of prerelease custody requested was 365 days under the Second Chance Act (SCA) and 175 days under the provisions of the FSA. (Exhibit A). An RRC placement date from the South Carolina Residential Reentry Management Office (RRM) came back as September 6, 2024, a total of 190 days RRC placement. This number is not an adequate representation of the intentions of the First Step Act or the Second Chance Act for the reasons to follow. Petitioner has exhausted the BOP Administrative Remedy process as required by the court, beginning in October of 2023 and concluding with the denial of the BP-11. (Exhibit A-D).

As remedy, Petitioner asks the Court for a determination that the Bureau of Prisons has not applied the correct amount of FTCs to his prerelease custody period as required by the FSA. Petitioner also requests the Court to compel the BOP to bring forth the correct and accurate FSA conditional Projected Release Date and Earliest Prerelease Placement Date calculations outlined by BOP policy and in accordance with the Legislative intent of FSA.

## I. PETITIONER'S EARNED FTCs ARE GREATER THAN RRC PLACEMENT TOTAL

Petitioner received 190 days of RRC placement. (Exhibit A). This total excludes benefits of both FSA and SCA. As of this filing, Petitioner has earned 300 FTCs (and counting) that are to be applied toward RRC/HC placement. The petitioner will remain in earning status until the end of his custodial sentence- per definition of "Prisoner" under 18 U.S.C. § 18 3635(a)(4). Using the current methodology that the BOP has employed, Petitioner's time earned equals time remaining point will be May 19, 2024. At this point, Petitioner will have 300 FTCs earned with 300 days remaining. Simple math shows a deficit of 110 days of earned time credit that the BOP will not apply.

Reading the language of BOP Program Statement 5410.01 (CN-2), First Step Act of 2018- Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4), dated November 18, 2022, it is evident that the BOP is standing in direct contradiction to both FSA and their own policy. P.S. 5410.01 reads in part: "To apply FTCs to prerelease placement, an inmate ordinarily must otherwise be eligible to participate in prerelease custody consistent with limitations as outlined in the Program Statement Community Corrections Center (CCC) Utilization and Transfer Procedure, and be "opted in" at the time of referral and be in minimum or low risk status through their last two assessment periods and transfer to prerelease placement. However, in all cases, earned time credits *will be applied*

3

to prerelease custody (RRC and/or HC) *as required* by the First Step Act."(P.S. 5410.01 at p.14)(emphasis added).

The Program Statement continues: "The First Step Act requires that, if an individual meets the criteria outlined in (c)(1), the credits *must* be applied when the amount of the credits earned is equivalent to the remainder of the prisoner's imposed term of imprisonment, consistent with the calculation described below. Pre-release placement in a Residential Reentry Center (RRC) or Home Confinement (HC) will be based on FTCs other than those already applied to early transfer for supervised release."(Id. at p.15) (emphasis added).

A Court in the Southern District of New York found "that the BOP does not have discretion to impose additional eligibility requirements or refuse to transfer eligible prisoners to prerelease custody." Quoting Person Doe v. Fed Bureau of Prisons, 2024 U.S. Dist. LEXIS 19755:

> The Court agrees with Judge Cott and the line of case law that he cites. See Brodie v. Pliler, no. 22 Civ. 3821, 2022 WL 16751908, at *4 (S.D.N.Y. Nov. 7, 2022); United States v. Pouryan, No.11 Cr. 111-6, 2023 WL 3294360, at *1 (S.D.N.Y May 5, 2023). The FSA sets forth eligibility criteria for a transfer to prerelease custody and, for prisoners that meet the criteria, uses the mandatory "shall." Compare 18 U.S.C. § 3632(d)(4)(C), with id. § 3624(g)(3) (using "may" to describe the BOP's authority to move up the supervised-release date); see United States v. Kahn, 5 F.4th 167, 174( "The word 'shall,' in a statute, indicates a command; what follows the word 'shall' is 'mandatory, not precatory.'" (quoting Mach Mining, LLC v. EEOC, 575 U.S. 480, 486, 135 S. Ct. 1645, 191 L. Ed. 2d 607(2015)). Moreover, the FSA designates which prisoners are ineligible to accrue time credits, see 18 U.S.C. § 3632(d)(4)(D), and requires the BOP to "ensure there is sufficient prerelease custody capacity to accommodate all eligible prisoners." Id. § 3624(g)(11). The FSA's comprehensive scheme, therefore does not afford the BOP discretion to transfer an eligible individual to prerelease custody." Under the FSA, Petitioner is eligible and has sufficient time credits to transfer to prerelease custody, and the BOP is obligated to implement the transfer.

The petitioner has been incorrectly locked into a prerelease custody date of September 6, 2024 that is contrary to FSA, BOP policy and case law. Under the FSA, Petitioner is eligible and will have

4

sufficient time credits to transfer to prerelease custody on May 19, 2024 and the BOP is obligated to implement the transfer.

II.      **CALCULATIONS OF FSA PROJECTED RELEASE DATE AND EARLIEST PRERELEASE PLACEMENT DATE RESOLVES PETITIONER'S ISSUE.**

Along with the language in P.S. 5410.01 that supports Petitioner's request for recalculation and application of FTCs is the introduction of the FSA conditional Projected Release Date (PRD).(Id at p.16). Over the past eighteen months since P.S.5410.01 was published, the PRD has developed many synonyms such as "the projected RRC/HC placement date," "the earliest eligible pre-release placement date," "Date of Max Earned FTCs," and "Earliest Conditional Pre-Release Date." The Petitioner will defer to the Court's preference of proper nomenclature but will refer to the date simply as the "PRD" going forward. Based on the request of this Writ, it goes without saying that the BOP has yet to introduce this date after 18 months.

Program Statement 5410.01 reads in part: "For Minimum and Low PATTERN risk inmates, consistent with methodology described in Sections 6 and 7 of this policy, the Bureau will initially estimate an FSA conditional Projected Release Date (PRD) by calculating the maximum number of potential FTC that an inmate may earn during his or her sentence." (Id at p. 16). Furthermore, "As explained in Section 10(b) the Bureau will calculate an inmate's PRD by assuming that an inmate will remain in earning status throughout his or her sentence, including while in prerelease custody." (Id at p.17).

Nearly five months later in the April, 2023 Annual Report issued by the United States Attorney General, this concept of the PRD was further explained: "Finally, the policy specifies that the BOP will calculate and award time credits for the full incarceration term. Earned time credits are now calculated at the initial stages of the individual's sentence, with a presumption that the earned

5

time credits are then adjusted if the individual does not earn credits through non-participation or for other reasons during their time in custody."(United States Department of Justice, Office of the Attorney General, First Step Act Annual report, p.18)(emphasis added). This language comes from the very office charged by Congress to carry out their legislation (18 U.S.C. §3631), yet the PRD has remained absent from BOP implementation.

Had the elusive PRD been ready for launch with P.S. 5410.01 in November 2022, the calculation would have shown Petitioner's maximum amount of earned FTCs to be 1,010. Keeping the Annual Report's language of "calculate and award[1]" in mind, as well as Petitioner's 365 days of SCA recommendation, the PRD/earliest prerelease date would have been June 9, 2022 – nearly 24 months ago.

P.S. 5410.01 makes very clear that on top of a PRD calculation, the SCA recommendation must be considered in a RRC/HC submission. The program statement reads: "RRC and/or HC referrals will ordinarily be submitted to the respective Residential Reentry Management (RRM) office 12 months in advance of the inmate's PRD or at least 60 days prior to the projected RRC/HC placement date, whichever is greater. The RRC and/or HCC recommendation will include the total number of days recommended based on the Five Factor Review (see 18 U.S.C §3621(b)), required under the Second Chance Act plus the remaining number of *FTC days not applied to supervised release at the time of referral.* When determining the FTC days available to be applied toward RRC/ HC placement, the Bureau will assume that the inmate will remain in earning status from the referral date until the transfer to prerelease custody." (Id at p.16) (emphasis added). According to the Unit Team response (Exhibit A), the South Carolina RRM office gave no consideration to additional SCA

---

[1] Award defined as "to give in accordance with a judicial or administration determination or decision, to grant as deserved." (Merriam Webster's Dictionary of Law, 2016)

RRC/HC recommendation while relying on an invalid explanation of bed space concerns (Id. § 3624(g)(11)) when processing Petitioner's submission.

On November 20, 2023 the BOP published another piece of literature intended to provide further explanation for the implementation of FSA titled "First Step Act Admission and Orientation (A & O) Addendum." (Exhibit E). Page 9 of this document explains what a FSA Conditional Release Date is- in simple terms, when an inmate is completely done with BOP custody. In the next paragraph, the addendum reads: "Additionally, a second application will project the maximum number of FTCs which can be earned during your term of incarceration. This will assist in determining the earliest eligible pre-release date. This means your Unit Team will be able to monitor your projected number of FTCs and submit your RRC referral timely." (Exhibit E, Pg. 9) (emphasis added). The BOP recognizes their role in implementing the First Step Act but the lack of action is blatantly obvious. Chronologically speaking, the PRD was introduced in November 2022, the earliest eligible pre-release placement date introduced in November 2023, and in present day there is nothing to show for either.

A manual calculation of Petitioner's PRD utilizing language from FSA, P.S. 5410.01 and FSA A & O Addendum would be as follows:

**Statutory Release Date: 3/15/26**

| Start | Stop | Pgm Days | Disallowed Pgm Days | Carry Over Pgm Days | TCF | FTC |
|-------|------|----------|---------------------|---------------------|-----|-----|
| 12/21/18 | 12/23/23 | 1799 | 29 | 0 | 10 | 590 |
| 12/23/23 | 03/15/26 | 813 | 0 | 29 | 15 | 420 |
| | | | | | | 1,010[2] |

3/15/26 – 365    FTCs = 3/15/25 *FSA Conditional Release Date
3/15/25 – 645    FTCs = 6/09/23 *Date of Max Earned FTCs
6/09/23 – 365    Days SCA Recommendation= 6/9/2022 *Earliest Possible Transfer to RRC/HC

_____

[2] Time Credits are calculated as follows:
Accrued Pgm Days ÷ 30 day cycles = number of earning cycles. (Rounded down to the whole number)
Number of earning cycles × The Time Credit Factor = number of FTCs earned

Page ten of the FSA A&O Addendum provides an example of the above calculations that aligns seamlessly (Exhibit E, p.10). The Petitioner understands that his Earliest Possible Transfer to RRC/HC date predates the publication of P.S.5410.01 and the PRD calculation methodology explanation. The petitioner respectfully asks the court to recognize the positive impact potential this calculation could have had along with the detrimental effect the BOP's negligence in calculating the PRD has had on him and other inmates alike.

Calculating this date makes sense. It incentivizes the continuation of participation in EBRRs and avoiding disciplinary action by informing inmates of their earliest possible release to RRC/HC. It allows for all of the time credits to be *earned* over the inmate's entire sentence and for all *earned* credits to be applied in a manner that will result in a benefit to the inmate. If the Petitioner were to be transferred to RRC/HC when his time earned equals time remaining, as per policy and law, he will be expected to remain in earning status for the 300 days remaining on his sentence. However, given the lack of a PRD calculation, Petitioner will earn 150 FTCs that he will never be able to apply, depriving him of additional time he could have spent in prerelease custody reintegrating himself with society and putting to good use habits learned from EBRR participation.


III.  **CONCLUSION**

The selective application of FTCs to Petitioner's prerelease custody period conflicts with congressional intent. The BOP recognized FSA's "goal of attaining maximum recidivism reduction. The Bureau will continue to emphasize the need for full and successful participation in EBRR programs and PAs, as recommended for each inmate, to achieve the maximum award of FSA Time Credits to the maximum number of eligible inmates." (Federal Register/ Vol. 87, No.12/ Wednesday,

January 19, 2022). Currently, the BOPs method of calculating and applying FTCs accomplishes the opposite. Congress passed FSA and enacted it into law in 2018. Almost six years later, inmates are still waiting for the BOP's compliance with FSA's intent.

Petitioner meets all of the required criteria for the application of earned FTCs to his prerelease custody period. He has remained in earning status, participated in EBRR programs and maintained appropriate conduct. Without judicial intervention, the Petitioner will not be compensated but with the minimum reward for his efforts.

Wherefore, the Petitioner respectfully requests that this Honorable Court grant this petition for a Writ of Habeas Corpus and order the BOP to recalculate and apply the correct number of earned FTCs to his prerelease custody period in accordance with BOP policy and the First Step Act.

/S/ _____
JAMES C. MCKEE #31679-171


## CERTIFICATE OF SERVICE

I, James C. McKee, being of sound mind, do hereby CERTIFY under penalty of perjury and pursuant to Title 18 U.S.C. § 1746 that all statements made and documents presented herein are true and authentic to the best of my knowledge. Three copies of the petition for writ of habeas corpus as well as three copies of Memorandum of Law and Fact in Support of Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 has been placed in the prison mail system at FCI Milan, Milan Michigan addressed to the United States District Court, Eastern District of Michigan.

Executed on April 28, 2024.

/S/ _____
JAMES C. MCKEE #31679-171

MID 330.16.89
September 18, 2012
Page 7

EXHIBIT A

11-8-23

10/8/8

Attachment B/Part 1
FCI/FDC Milan, Michigan
**Attempt at Informal Resolution**

REMEDY # _____

Inmate's Name: _James McKee_

Registration Number: _31679-171_ Housing Unit: _A_

**ATTEMPT AT INFORMAL RESOLUTION:**

1.  Briefly state the complaint and requested corrective actions.

I was given 6 months halfway house for FSA. I was not given any halfway house time for my eligibility under the Second Chance Act. I am eligible for both and therefore I am entitled to receive up to 12 months halfway house time in addition to the 6 months I received from my First Step Time Credits (FTCs). If not halfway house, home confinement is an option. Pursuant to the Second Chance Act of 2007, 18 USC § 3624(c), I am requesting that the amount of time allocated for me to spend in the halfway house and/or on home confinement be modified to include up to an additional 12 months.

2.  Document your efforts to resolve the matter to include policies reviewed. Note any reasons an informal resolution could not be achieved.

I have addressed this matter with my Unit Team and spoken with Mr. Burnett. I also reviewed the First Step Act and Second Chance Act 18 USC § 3624(c). Unit team put you in for a placement date of 9-22-23 which was 365 days under the 2nd chance act, and @ the time of referral 175 FTC days. As per your previous informal resolution the same issue - the answer remains the same. Based on Contracha requirements & bed space concerns you were approved for

Inmate Signature: _James McKee_ Date: _10-30-23_

Inmate Printed Name: _James McKee_

Unit Counselor Signature: _K. Tomich_ Date: _10/30/23_

Unit Counselor Printed Name: _K. Tomich_

a DST date of 9-6-24 (190 days) which satisfies FTC requirements. You will be considered for home confinement after you arrive @ the RRC.

**U.S. DEPARTMENT OF JUSTICE** EXHIBIT B 1 of 2 **REQUEST FOR ADMINISTRATIVE REMEDY**

Federal Bureau of Prisons

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

| From: | | | |
|---|---|---|---|
| **LAST NAME, FIRST, MIDDLE INITIAL** | **REG. NO.** | **UNIT** | **INSTITUTION** |

**Part A– INMATE REQUEST**

| **DATE** | **SIGNATURE OF REQUESTER** |
|---|---|

**Part B– RESPONSE**

POOR QUALITY ORIGINAL

| **DATE** | **WARDEN OR REGIONAL DIRECTOR** |
|---|---|

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

SECOND COPY: RETURN TO INMATE                    CASE NUMBER: _____

CASE NUMBER: _____

**Part C– RECEIPT**

| Return to: | | | |
|---|---|---|---|
| **LAST NAME, FIRST, MIDDLE INITIAL** | **REG. NO.** | **UNIT** | **INSTITUTION** |

SUBJECT: _____

| **DATE** | PRINTED ON RECYCLED PAPER | **RECIPIENT'S SIGNATURE (STAFF MEMBER)** | BP–229(13) APRIL 1982 |
|---|---|---|---|

USP LVN

**BP-229 RESPONSE**                                    **CASE NUMBER: 1183806-F1**

Your Request for Administrative Remedy (BP-229), dated November 8, 2023, has been reviewed. You are claiming that consideration was not given to the 2nd Chance Act at the time of your RRC referral.

A review of the issue(s) you raise in your BP-229 has been conducted. On August 7, 2023, your Unit Team submitted a Residential Reentry Center referral on your behalf requesting a placement date of September 22, 2023, which, at the time of referral, was 365 days under the 2nd Chance Act and 175 days under provisions of the First Step Act (FSA). However, due to limited community resources in your area of release and housing constraints at contractual facilities, the RRC is only able to accommodate a placement date of September 6, 2024.

Accordingly, your request for Administrative Remedy is denied. In the event you are not satisfied with this response and wish to appeal, you may do so within 20 calendar days of the date of this response by submitting a BP-230(13) to the Regional Director, Federal Bureau of Prisons, North Central Regional Office, Gateway Complex Tower II, 8th Floor, 400 State Avenue, Kansas City, Kansas 66101-2492.


_____                          ___12/14/23___
E. Rardin, Warden                                  Date

U.S. Department of Justice          EXHIBIT C 1 of 2          **Regional Administrative Remedy Appeal**

Federal Bureau of Prisons

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: 

| McKee, James C. | 31679-171 | A | FCI - Milan |
|---|---|---|---|
| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A - REASON FOR APPEAL**

The thrust of this Administrative Remedy, is the negligence of my Unit Team which is detrimental to my liberty. Specifically, their refusal to re-submit an updated Residential Reentry Center (RRC) referral on my behalf. This submission will not only inform the RRC of my recently established place of residence, but it will also avail a wider scope of considerations to them when evaluating the community resources now obtainable Without re-submission, I am locked into a RRC date that is more than 8 months out and denied the application of all FTC's I will have earned from RRC acceptance up to the placement date of my RRC. Moreover and most critical to the previous RRC referral, absolutely no considerations have been given to my Projected Release Date (PRD) by my Unit Team. The only resolution acceptable is re-submission of RRC referral to contain the address that I have recently established. The submission should contain my PRD as well.

_____          _____
DATE                                          SIGNATURE OF REQUESTER

**Part B - RESPONSE**

_____          _____
DATE                                          REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE          CASE NUMBER: _183806-R1_

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

SUBJECT: _____

_____          _____
DATE                                          SIGNATURE, RECIPIENT OF REGIONAL APPEAL

BP-230(13)
JUNE 2002

USP LVN

**U.S. Department of Justice**
**Federal Bureau of Prisons**
**North Central Regional Office**

Regional Administrative Remedy Appeal
Part B - Response

Administrative Remedy Number:   1183806-R1

This is in response to your Regional Administrative Remedy Appeal received January 3, 2024, in which you claim additional time is warranted for Residential Reentry Center (RRC).   For relief, you request consideration for additional time in an RRC.

We have reviewed your appeal and the Warden's response dated December 14, 2023.   The Second Chance Act of 2007 (the Act) allows the Bureau of Prisons to consider all inmates for RRC placement for a maximum of up to 12 months.   According to criteria identified in the Act, pre-release RRC placement decisions must be made on an individual basis in every inmate's case.   Among the criteria staff consider are the factors contained in 18 U.S.C. § 3621(b), which include the resources of the facility contemplated, the nature and circumstances of the offense, the history and characteristics of the prisoner, any statement by the court that imposed the sentence (concerning the purposes for which the sentence to imprisonment was determined to be warranted; or recommending a type of penal or correctional facility as appropriate), and any pertinent policy statement issued by the Sentencing Commission.

You currently have a projected release date of March 15, 2025, via First Step Act release. Your case was evaluated to determine if you warrant additional RRC placement utilizing the five criteria under the eligibility provisions of the Act.   Based on your release needs, unit staff recommended you for RRC placement date based on FTCs which can be applied to RRC or HC.   The Warden approved the recommendation, and the referral was submitted to the Residential Reentry Manager (RRM). The RRM has the sole responsibility to assign an RRC placement date.   The RRM has determined September 6, 2024, as an appropriate placement date.   Accordingly, the institution's decision is supported.

Based on the above information, this response to your Regional Administrative Remedy Appeal is for informational purposes only.

If you are dissatisfied with this response, you may appeal to the Office of General Counsel, Federal Bureau of Prisons, 320 First Street, NW, Washington, DC 20534.   Your appeal must be received in the Office of General Counsel within 30 days from the date of this response.

2-12-2024
**Date**

Andre Matevousian, Regional Director

**U.S. Department of Justice**   EXHIBIT D 1 of 3   **Central Office Administrative Remedy Appeal**   3/1/24

Federal Bureau of Prisons

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-DIR-9 and BP-DIR-10, including any attachments must be submitted with this appeal.

| From: | McKee, James C. | 31679-171 | A | FCI Milan |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A—REASON FOR APPEAL**   I am appealing the Regional Office's denial of my administrative remedy request. There has been no explanation given as to why I am only receiving just over 6 months of RRC placement. I have a residence ready for inspection to be considered for Home Confinement. I have meaningful employment waiting on my return. Both of these things support my transfer to direct Home Confinement.

The RRC/HC placement date directly contradicts both the First Step Act and the Second Chance Act. To date, I have earned 270 Federal Time Credits (FTCs) towards RRC/HC placement. From this point up to transfer to RRC/HC placement, I stand to earn 105 additional FTCs. Because my date has been incorrectly locked in, I do not receive any benefit from earning these Time Credits nor from the Time Credits I will earn during any time in prerelease custody. Any days not applied to a reduction in sentence must be applied to transfer to prerelease custody. This is not optional by statute 18 U.S.C. § 3632(a)(3)(C).

The Second Chance Act (SCA) allows for 12 months of RRC/HC placement that is also not optional. Nothing in 18 U.S.C. § 3621(b) precludes me from receiving SCA placement recommendation in addition to the FSA Time Credits. Locking me into an RRC date that is 6 months away completely subverts the intent of both laws.

The Bureau of Prisons attempted to remedy this problem by authoring Program Statement 5410.01. This contained the idea of the FSA conditional Projected Release Date (PRD) and in subsequent

| 3-5-24 | (See Attachment) | James McKee 31679-171 |
|---|---|---|
| DATE | | SIGNATURE OF REQUESTER |

**Part B—RESPONSE**

> **RECEIVED**
> MAR 15 2024
> Administrative Remedies
> Federal Bureau of Prisons

| | DATE | | | GENERAL COUNSEL |
|---|---|---|---|---|

ORIGINAL: RETURN TO INMATE    CASE NUMBER: 1183806-A1

**Part C—RECEIPT**

CASE NUMBER: _____

Return to: _____
          LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: _____

_____    _____    BP-231(13)
        DATE                SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL   APRIL 1982

USP LVN

## BP-11 ATTACHMENT

supporting materials, the Earliest Prerelease Placement Date. Section 10 of the Program Statement states "the Bureau will initially estimate an FSA conditional Projected Released Date (PRD) by calculating the maximum number of potential FTC that an inmate may earn during his or her sentence." Furthermore, "the Bureau will calculate an inmate's PRD by assuming that an inmate will remain in earning status throughout his or her sentence, including while in prerelease custody."

In reference to RRC/HC submissions, the PS 5410.01 clarifies that "RRC and/or HC referrals will ordinarily be submitted to the RRM office 12 months in advance of the inmate's PRD or at least 60 days prior to the projected RRC/HC placement date, whichever is greater. The RRC and/or HC recommendation will include the total number of days recommended based on the Five Factor Review, required under the Second Chance Act, plus the remaining number of FTC days not applied to supervised release at the time of referral."

This policy has been in place for 16 months and nothing has been done with it. There is no logical reason for my total RRC/HC placement to be 6 months and 10 days. The lack of calculation of my PRD and Earliest Prerelease Placement Date has deprived me of a benefit mandated by Congress and the Bureau itself.

As REMEDY, I am requesting a calculation of my PRD as well as my correct RRC/HC date, and it be applied accordingly, resulting in my transfer to prerelease custody IMMEDIATELY.

EXHIBIT D 3 of 3

**Administrative Remedy No. 1183806-A1**
**Part B - Response**

This is in response to your Central Office Administrative Remedy
Appeal, wherein you challenge the application of your earned
Federal Time Credits (FTC) under the First Step Act (FSA).
Specifically, you contend you are not receiving full
consideration for FTCs available to apply to pre-release
placement.  For relief, you request to be provided 12 months of
Residential Reentry Center (RRC) or home confinement placement.

We have reviewed documentation relevant to your appeal and,
based on the information gathered, concur with the manner in
which the Warden and Regional Director responded to your
concerns at the time of your Request for Administrative Remedy
and subsequent appeal.  Our review revealed that your time
credits are being applied pursuant to Program Statement 5410.01
CN-2, First Step Act of 2018 - Time Credits: Procedures for
Implementation of 18 U.S.C. § 3632(d)(4).

Your FSA Time Credit Assessment, dated March 2, 2024, reflects
you have accrued 1869 program days, or days of successful
programming.  Based on your accrued program days and your FTC
earning status, you have earned 365 days of FTC toward early
release and 270 days of FTC that may be considered for
application toward community placement.  We note that your Unit
Team recommended an RRC placement of September 22, 2023;
however, the Residential Reentry Manager (RRM) provided a
placement date of September 6, 2024.

While individuals may be referred for RRC or HC placement based
upon the criteria set forth in 18 U.S.C. 3621(b) and the Second
Chance Act, in conjunction with the number of FSA time credits
earned and projected, placement in the community is subject to
resource availability.  The RRM has final authority for
determining the RRC placement date.  Accordingly, we find you
received proper consideration for RRC placement.

Considering the foregoing, this response is for informational
purposes only.

March 18, 2024
Date

Timothy Barnett, Administrator
National Inmate Appeals

# First Step Act Admission and Orientation (A&O) Addendum

The First Step Act (FSA) allows eligible inmates to receive Federal Time Credits (FTCs) for successfully participating in approved Evidence-Based Recidivism Reduction (EBRR) Programs and/or Productive Activities (PAs).  These credits can be used toward pre-release, community-based placement and/or toward early release to a Supervised Release Term.

## What is the PATTERN Risk Assessment?

All sentenced inmates, regardless of eligibility status, will be assessed for risk of recidivism and for their needs.  The Prisoner Assessment Tool Targeting Estimated Risk and Needs (PATTERN) is the automated recidivism risk assessment tool and part of the Bureau's FSA-approved Risk and Needs Assessment System.  The PATTERN tool is completed during the Initial Classification and is used to assign each incoming inmate an initial recidivism risk level of Minimum, Low, Medium, or High.  You will receive a General and Violent Risk Level and the higher of the two is your overall Recidivism Risk Level.  The resulting recidivism risk level is not to be confused with security or custody level.  Risk level is re-assessed at every regularly scheduled program review (commonly called a team meeting) throughout your incarceration with the BOP.  Your case manager will discuss your PATTERN results during your Initial Classification and at each team meeting throughout your incarceration.

Your case manager will also provide you a copy of your PATTERN risk assessment worksheet at each team.  The worksheet will show your current PATTERN risk scores and level for General and Violent Recidivism Risk as well as your overall Risk Level.  The worksheet will also list all your program completions for which you are receiving credit.

In addition to the PATTERN risk assessment being reviewed during regularly scheduled team meetings, it will also be automatically reviewed during the monthly auto-calculation of Federal Time Credits to capture changes in risk level elements since the last team.  For example, program completions, clear conduct or sanctioned incident reports, and birthdays (age).  While this new automation will allow for changes to be credited closer to their occurrence, it will also ensure that changes are credited for the FSA Assessment.  This automation applies to all inmates whether in the institution, pre-release placement, on writ, in-transit, etc.

## What is the SPARC-13 Needs Assessment?

The Standardized Prisoner Assessment for Reduction in Criminality (SPARC-13) is the Bureau's needs assessment system.  It is used to assess inmates in 13 need areas to focus recommended programming to reduce the risk of recidivating.  Portions of the SPARC-13 assessment require the inmate's active participation.  **Failure on the inmate's part to complete the self-assessment surveys timely will delay completion and negatively impact the inmate's ability to begin earning FTCs as the inmate will be considered to have "opted out," and therefore will be in non-earning status regardless of eligibility to earn FTCs.**

What does this mean?  **If you do not complete the surveys, which are found on the Trust Fund Limited Inmate Communication System (TRULINCS), you will NOT earn FTCs.**  Do not wait until your Initial Classification to complete the surveys.  The sooner they are completed, the better.  If you are having difficulty finding the surveys, opening them, or understanding the questions, please talk to your unit team.

Based on the results of your initial Needs Assessment, staff from the different departments will make program recommendations to assist you in reducing your risk of recidivism.  Your needs are re-assessed at every regularly scheduled program review meeting throughout your sentence and program recommendations will be adjusted based on changes in your need areas.  Your case manager will discuss your SPARC-13 results as well as the program recommendations during your Initial Classification and at each team meeting throughout your incarceration.

Your case manager will also provide you a copy of your Needs Assessment worksheet at each team.  The worksheet will show your current PATTERN risk scores and level for General and Violent Recidivism Risk as well as your overall Risk Level.  The worksheet will also list all your program completions for which you are receiving credit.

Similar to the monthly automated review of the PATTERN risk assessment, the SPARC-13 Needs Assessment will be automatically reviewed during the monthly auto-calculation of Federal Time Credits to captures changes in your Needs Assessment.

**What are the 13 areas the SPARC-13 Needs Assessment looks at?**

| | | |
|---|---|---|
| Anger/Hostility* | Family/Parenting* | Rec/Leisure/Fitness |
| Anti-Social Peers* | Finance/Poverty | Substance Use |
| Cognition* | Medical | Trauma |
| Dyslexia | Mental Health | Work |
| Education | | |

*Self-Assessment Surveys completed on TRULINCS.  While the completed assessment information is uploaded monthly, you are given credit based on the day you completed the surveys – not the date it was uploaded.

**What is an Evidence-Based Recidivism Reduction (EBRR) Program?**

An EBRR Program is a group or individual activity found in the FSA Approved Programs Guide where research has shown that participation reduces, or is likely to reduce, recidivism.  Some examples of EBRR Programs are:
- GED
- Residential Drug Abuse Program (RDAP)
- Anger Management

- Life Connections
- UNICOR Employment

**What is a Productive Activity (PA)?**

A PA is a group or individual activity found in the FSA Approved Programs Guide that enhances skills to address identified needs and allows an inmate to remain productive and thereby maintain, or work toward achieving, a minimum or low risk of recidivating.  Some examples of PAs include:
- Alcoholics Anonymous (AA) Support Group
- Bereavement Support Group
- Circle of Strength
- Franklin Covey 7 Habits on the Inside

Inmates are also encouraged to also participate in other available activities that reduce idleness and contribute to an inmate's overall positive institutional adjustment and help maintain clear institution conduct.  Some examples include:
- Productive, free-time activities (e.g., recreation, hobby crafts, or religious services)
- Family interaction activities (e.g., social visiting)
- Personal growth and development classes (e.g., adult continuing education classes)
- Institution work program
- Community service projects

**What is an FSA Assessment and when does it occur?**

The FSA Assessment brings everything together: PATTERN, SPARC-13, and EBRR/PA program participation.  The FSA Assessments are independent, automated, and coincide with the Initial Classification and Program Review timeline.  This means the initial FSA Assessment occurs 28 days after your arrival at your designated facility.  Subsequent FSA Re-Assessments occur every 180 days, if you are more than 12 months from your projected release date, and every 90 days, if you are under 12 months from release.

Because FSA Assessments are automated, this means if your team meeting is late because your case manager is out sick or you miss it because you're out on writ or in-transit to another facility, your FSA Assessment will occur based on the most recent information in your record.  And, with the enhanced automation in the PATTERN and SPARC-13 tools, those will also be updated even if you're not in your institution, or if your case manager is out sick.

**Who is NOT eligible to earn FTCs?**

- U. S. Code Inmates convicted of offenses excluded by the FSA
- U. S. Code Inmates with prior state or federal convictions excluded by the FSA
- U. S. Code, Old Law Inmates

- U. S. Code Inmates in state custody
- State boarders
- Treaty Transfers Inmates
- Military Inmates
- D. C. Code Inmates*

Your case manager will discuss your eligibility status during your Initial Classification.  If you believe you are eligible, ask your case manager which offense and/or sentence makes you ineligible to earn time credits.  Remember your ineligibility is based on either your conviction and/or your court of jurisdiction.

*D. C. Code inmates: In late Spring 2023, the D. C. Government passed statute which would allow eligible individuals to earn time credits.  Unfortunately, the statute, as passed, did not provide the same level of detail and structure which was included in the Federal statute.  Currently, the Bureau is working with the D. C. Government to determine eligibility criteria to earn and apply credit.  As more information becomes available, it will be distributed.

**What if I have consecutive charges and one of them is on the disqualifying list, but the other isn't; will I earn credits?**

The short answer is no.  Whether you have multiple counts, multiple J & Cs, and/or multiple jurisdictions, you are serving a single, aggregated term of incarceration.  The review for eligibility is based on your term of incarceration.  You are either eligible or you are not.  This means if one count, one J & C, or one jurisdiction is ineligible to earn time credits, then your term of incarceration is ineligible.

Also, if you are convicted for new criminal conduct while serving your sentence, whether your sentence is run concurrently or consecutively, and if the new conviction is for an ineligible offense, the whole term of incarceration becomes ineligible for earning FTCs.  For example, USC 18 § 1791, Providing or Possessing Contraband in Prison (weapon, cell phone, tobacco, alcohol, etc.) is a disqualifying offense. Even if you only received a short sentence of a few months, it will disqualify you from being able to earn credit or apply any credit you may have already earned.

**When do I start earning FTCs?**

You will earn your first FTCs once you complete 30 programming days.  You can start earning programming days AFTER you arrive at your designated institution, your PATTERN Risk Assessment and SPARC-13 Needs Assessment are completed, and you agree to participate in recommended programming.  This means you cannot begin earning programming days and time credits while in pretrial or holdover status, even if you are being held in one of the Bureau's Detention Centers or Jail Units.  The reason is simple, the FSA Assessment process begins after you arrive at your designated facility and begin the intake and Initial Classification process.

The only thing which will delay you accumulating programming days is not completing the self-assessment surveys on TRULINCS or refusing to complete the Trauma or Dyslexia Need Assessments. Those elements of the FSA Assessment which are completed by staff have no impact on your ability to accumulate programming days. This means whether your Initial Classification is completed days after your arrival or not until day 27, you will still begin accumulating programming days as soon as you complete the four self-assessment surveys.

**What if I'm back in prison and had FTCs I didn't get to use before I released last time?**

Credits can only be earned and used during your current term of incarceration. Once you are released from your current term, time credits cease to exist. If you return to custody, you start over.

**If I'm eligible to earn FTCs, do I earn FTCs the whole time I'm in prison?**

Not necessarily. There are situations where an inmate is unable or unwilling to participate in programming, and therefore, will not earn FTCs. Those situations include:

- Disciplinary Segregation
- Designation outside the Institution (outside hospital, furlough, etc.) *
- Temporary Transfer to another Federal or a non-Federal agency (Fed Writ, State Writ, IAD, etc.) *
- Placement on a Mental Health/Psychiatric Hold
- Detention as a material witness or for civil contempt
- Placement in civil commitment
- Opting Out (see definition below)
- Refusal to participate in required programs (e.g. Inmate Financial Responsibility (FRP), Drug Education, Second Chance RRC placement, etc.)

*Any part of a day, is considered a day. Therefore, if you are at your designated facility for some portion of the day, you will still be given credit for that day. Remember, you have to accumulate 30 programming days to earn FTCs. This means, for example, if you are admitted to an outside hospital on a Friday and return to the institution on Monday. You are losing two programming days (Saturday and Sunday) – not Time Credits.

**How many FTC days can I earn?**

The number of FTCs earned is based on the length of your incarceration and your total number of programming days. The statute limits the number of earned time credits to "an amount that is equal to the remainder of the prisoner's imposed term of imprisonment." What does this mean? You can only apply time credit up to the amount of time remaining to serve. If for example, you have earned 310 days of time credits toward early release and then receive a sentence reduction which creates a new statutory release date which is only 9 months away (approximately 270 days), your FTCs will be applied to the new date; you will be an immediate release, and the 40 days left over will just disappear

with your release.

**What is "Opting Out?"**

You are opting out if you refuse to participate in or complete any EBRR programs or structured, curriculum-based PAs recommended based on an identified need. You are also considered to be opting out if you refuse to participate in or fail to complete any portion of the Standardized Prisoner Assessment for Reduction in Criminality (SPARC-13), the Bureau's Needs Assessment system.

Based on the results of your Needs Assessment, staff will recommend you participate in EBRR programs and/or PAs to address your needs. If you decline to participate in an EBRR program or PA which has been recommended based on a specific identified needs area, you will be considered opted out, and therefore, in non-earning status regardless of eligibility to earn FTCs.

**Can I earn FTCs while waiting for a program?**

Yes. You will remain in FTC earning status while on a waitlist for EBRR programs or PAs recommended based on your needs assessment if you have not refused to participate. However, if you later refuse to participate in the recommended EBRR program or PA for which you were on a waitlist, you will be considered declined, or opted out, for the entire waitlist period.

The waitlist period is defined in terms of the corresponding need area(s). When an inmate declines participation after being on a waitlist, the auto-calculation application will first identify any need areas associated with the declined program and then identify the oldest waitlist associated with the need area(s). Any credits earned since the oldest waitlist associated with the need area, without intervening participation, will be rescinded to reflect the inmate's refusal.
This means that any credits earned during the waitlist period will be removed to reflect your refusal/opting out.

**How do I earn my credit?**

FTCs are awarded based your eligibility to earn credit, completion of the PATTERN and SPARC-13 assessments, and ongoing participation in programs designed to reduce the risk of recidivating. Once you are in earning status, you will remain in earning status unless or until your status changes as previously described.

FTCs are auto-calculated based on 30-day periods in earning status – meaning for every 30 days you are in earning status, you will earn either 10 or 15 days based on your PATTERN risk level at the time of your FSA Assessment. FTCs will be posted on a monthly basis, agency-wide, based on a completed 30-day period. There is no partial or prorated credit for either programming days or FTCs. No FTCs will post if you have not accumulated 30 days in earning status. Rather, those days in FTC earning status will carry over to the next monthly cycle, and you will receive your FTCs at the end of the next cycle.

For example: If the first monthly posting of FTCs occurs only five days after you go into earning status, no FTCs will post to your record as you have not yet accumulated 30 days in earning status. However, those five days will carry over to the next monthly cycle, and you will receive the FTCs at the end of the second month.  If later, you go into FRP Refuse or decline a recommended needs-related program and go into opt out status, you will no longer be in earning status, and therefore, you will stop accruing days toward FTCs and no FTCs will post to your record.  Once you return to earning status, you will resume accruing days toward the earning of FTCs.

Along with other enhancements to the FSA Assessment process, beginning later in 2023, your Time Credit status will also be reviewed during regularly scheduled Program Review meetings which will allow you additional opportunities to catch up the "carried over" programming days and post Time Credits to your record sooner.

**How will I know how much credit I've earned?**

At each team, you will receive a copy of the Federal Time Credits Worksheet.  This worksheet will include, among other things:
- FTC days earned toward early release and toward RRC/HC placement
- Number of accrued and disallowed programming days
- Whether you are eligible to apply credits toward release, and if not eligible, the reason
- Accruing and disallowing time frames, total number of days, and reasons for disallowances
- FSA Assessment and the Recidivism Risk Level at the time of the Assessment
- FTC Earning Rate

Later in 2023 and into 2024, the FSA Time Credit Worksheet will be enhanced to provide additional information as well as improving the clarity of the information provided.

**How do I earn 15 days of credit instead of 10 days?**

Whether you earn 10 or 15 days of FTCs depends on your PATTERN Recidivism Risk level at the time of the FSA Assessment.  All eligible inmates will earn 10 FTC for every 30 days in earning status.  Once an inmate has maintained Low or Minimum risk for two consecutive FSA Assessments, the inmate can begin earning 15 FTCs for every 30 days in earning status.

**Can I lose FTCs?**

Yes.  You can be sanctioned to Loss of FTCs by the Disciplinary Hearing Officer (DHO) for an incident report.  However, you can appeal the loss through the Administrative Remedy Process.  More importantly, you can request to have those lost FTC days be restored or given back **AFTER** you have maintained clear conduct for two consecutive FSA Assessments.

**If I lost FTCs because I refused to take a recommended program, can I get those days restored?**

You didn't lose FTCs because you refused a recommended program, you lost programming days which resulted in you not earning FTCs.  Because you never earned the FTC days to start with, there is nothing to restore.  Remember, if you decline a recommended program, you are "opting out" and therefore are in a non-earning status.

**Once I earn FTCs, how do I get to use them?**

FTCs are used two ways – early transfer to prelease custody (halfway house or home confinement) or early release to your Supervised Release term.  If eligible, the first 365 days of FTCs will be applied to your early transfer to your Supervised Release term resulting in an early release from prison.  Any remaining FTCs are applied to pre-release custody resulting in your ability to transfer to halfway house or home confinement sooner than you would have without the credit.

**Does everyone get to use their FTCs or are there restrictions?**

No – not everyone will get to use the FTC days earned.  There are limitations.  For an inmate to have up to 365 days of earned FTCs automatically applied to early release, an inmate must meet the following criteria:

- Have a term of Supervised Release to follow the term of incarceration
- Have a low or minimum PATTERN risk level
- Have not opted out or refused to participate in any required program, and therefore, be in earning status

Credit earned in excess of 365 days is applied toward increased pre-release placement in halfway house or home confinement.

**If I don't have Supervised Release to follow, do I still get to use my FTCs?**

Yes, but they can only be applied to pre-release custody.

**What if I am High or Medium Risk? Can I apply the time credits I've earned?**

Maybe.  If you are High or Medium Risk but have maintained clear conduct and participated in all the recommended programming, you may be able to apply the credits you've earned by petitioning the Warden.  In determining whether to approve your petition, the Warden will consider the following:

- Whether you would not be a danger to society if transferred to prerelease custody or supervised release;
- Whether you have made a good faith effort to lower your recidivism risk through participation in recidivism reduction programs or productive activities, and
- Whether you are unlikely to recidivate.

How will you demonstrate this to the Warden?  By maintaining clear conduct and by participating in the EBRRs and PAs recommended to address your specific Needs.  Will maintaining clear conduct and participating in programming automatically mean you will be approved?  No.  Each case is reviewed individually considering both your history and your time in prison.  But, if you haven't maintained clear conduct for an extended period time and/or haven't completed programming, you shouldn't be surprised if your petition is denied.

**How do I petition the Warden to apply my Time Credits if I am High or Medium Risk?**

Submit an Inmate Request to Staff Member (copout) to your unit team during your regularly schedule Program Review team meeting.  The unit team will review your record and make a recommendation to the Warden.  The Warden, after reviewing your record and consulting with the Regional Director, will either approve or deny your petition.  You will receive a written response from the Warden to your request.  During all aspects of this program, you may file an Administrative Remedy if you choose.

**Are FTCs applied to my percentage of time served?**

No.  FTCs applied toward your release date do NOT impact your percentage of time served because FTCs do not change your Statutory Release Date – they only change your Satisfaction Date.

**What is an FSA Conditional Release Date?**

For eligible inmates who are Low or Minimum Risk, this is a presumed earliest release date you could earn with Federal Time Credits.  This calculation makes the presumption that once you are Low or Minimum risk AND in earning status, you will continue to remain in earning status.  As a reminder, the FSA Conditional Date, is **NOT** your release date as the credit is only applied as it is earned. Changes in your status (e.g., FRP Refuse, program declines, Disciplinary Segregation, etc.) will result in changes in your conditional date.  **The FSA Conditional Release Date is for planning purposes only.**

Additionally, a second application will project the maximum number of FTCs which can be earned during your term of incarceration.  This will assist in determining the earliest eligible pre-release placement date.  This means your Unit Team will be able to monitor your projected number of FTCs and submit your RRC referral timely.  Remember this is still just a planning tool, if your status changes, the possible maximum number of FTC days will change as well.

**Do I earn FTCs while in Halfway and/or Home Confinement?**

Yes.  As long as you continue to successfully program.  Remember incident reports can result in a change in your PATTERN Risk Level.  If this happens while in Halfway House and/or Home Confinement, it can also impact both your earning status and your ability to apply FTCs toward your release.  If your PATTERN Risk Level increases to Medium or High Risk for any reason, you will no longer be eligible to apply your FTCs, and may be removed from pre-release placement and returned to the institution.

**How does FTCs work with Pre-Release Placement?**

Your halfway house and/or home confinement recommendation will include the total number of days recommended under the Second Chance Act, plus the remaining number of FTC days not applied to Supervised Release at the time of the referral.

**Do FTCs change my Home Confinement Eligibility Date (HCED)?**

Yes and no.  Your Home Confinement Eligibility Date is calculated based on your statutory term.
FTCs do not impact the number of days making up the eligibility date – that block of days is the same
regardless of FTCs earned.  What changes is the date itself.  This is because the eligibility date is based
on the number of days prior to Projected Release Date, and as your release date changes (due to earned
FTCs), the Home Confinement Eligibility Date also changes, but the block of days making up the
statutory Home Confinement does not.  Plus, once you earn FTCs toward early pre-release placement,
the Home Confinement Eligibility Date is based on that same block of days, but in advance of the
maximum number of FTCs earned.



For example, if you had 30 months to serve (after Good Conduct Time) and had a minimum or low
Risk level from the beginning, you could earn up to 415 FTCs.  You would also have a Home
Confinement Eligibility Date of about 90 days.  The first 365 FTCs are applied toward release, leaving
you about 18 months to serve.  If your unit team also recommended you for a 120-day prerelease
placement under the Second Chance Act, that would be added to the 50 FTC days remaining for all
total recommended pre-release placement of 170 days.  But, because the Second Chance Act
Placement is served first to include the 90-day Home Confinement Eligibility, you would have to serve
at least 30 of your 120-day Second Chance Act placement in the halfway house before you could
transfer to home confinement.

**How do unresolving pending charges and/or detainers impact me getting Time Credit?**

As long as you are eligible to earn time credits, an unresolved pending charge and/or detainer has no
impact.  With the exception of inmates with final orders of deportation or removal – determinations
made based on documentation provided by Immigration and Custom Enforcement (ICE), unresolved
pending charges and/or detainers will not impact your ability to apply credit toward early release or
pre-release placement.

However, it is important to understand that while you are eligible for halfway house and/or home
confinement, placement in the community does NOT eliminate the outstanding detainers and/or
pending charges.  **Meaning - if you are in halfway house and/or home confinement and have
detainers and/or pending charges, you are at significantly higher risk to be arrested due to active**

**warrants, and an arrest will result in a technical escape for you and an interruption in your federal sentence as the Bureau will have lost primary jurisdiction.**

Because you are not eligible for a needs-based recommendation under the Second Chance Act, your FSA placement in halfway or home confinement is VOLUNTARY.  You can decline the voluntary FSA placement without any negative impact.  This means you can still apply your FTCs, up to 365 days, toward early release.  Please let your case manager know if you are declining the voluntary FSA placement due to unresolved pending charges or detainers in pre-release custody.

**Can I still earn FTCs if I'm eligible to receive the Residential Drug Abuse Program Early Release Benefit?**

Yes, but the Residential Drug Abuse Program (RDAP) Early Release Benefit is applied first to your release date, then any FTC days are applied afterwards.  This means you must complete all components of RDAP, to include the community-based portion – a minimum of 120-days in the community-based treatment program.

To receive the full benefit of both programs, you must have enough time remaining to complete all required components of RDAP.  In the event you do not have enough time remaining after completing the RDAP program to receive both, the number of FTC days applied will be reduced to allow for, at a minimum, the 120-day community-based placement as required under 3621(e).

**Questions?**

If you have questions about any aspect the First Step Act or the associated Federal Time Credits, including eligibility, requirements, or limitations, and/or programs, please talk to your unit team.  They will either be able to answer your question or direct you to staff in the department that can assist you.

James C. McKee 31679-171
Federal Correctional Institution
P.O. Box 1000
Milan, MI 48160



new/inmate's case

RECEIVED

MAY - 1 2024

CLERK'S OFFICE
DETROIT



**UNITED STATES POSTAL SERVICE**

Retail

# G

## US POSTAGE PAID
## $0.00

Origin: 48160
04/29/24
2562000160-45

### USPS GROUND ADVANTAGE™

1 Lb 3.40 Oz
RDC 01

C052

SHIP
TO:
231 W LAFAYETTE BLVD
DETROIT MI 48226-2700

**USPS TRACKING® #**

9534 6123 9328 4120 4929 22

Office of the Clerk
United States District Court
231 W. Lafayette Blvd  5th Floor
Detroit, MI  48226

U.S. MARSHALS