United States District Court
Eastern District of Michigan

James C. McKee, #31679-171,

          Petitioner,

          -vs-

Eric Rardin,

          Respondent.

Case No. 24-cv-11154

Honorable Denise Page Hood
Mag. Judge Patricia T. Morris

---

## Response to Petition for Writ of Habeas Corpus

---

James McKee's petition for a writ of habeas corpus under 28 U.S.C. § 2241 should be denied. This Court lacks jurisdiction because McKee challenges the place, rather than the fact or duration, of his confinement. And, in any event, the Bureau of Prisons has complied with its obligations under the First Step Act.

Respectfully submitted,

Dawn. N. Ison
United States Attorney

s/ *Jessica V. Currie*
Jessica V. Currie
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9531
jessica.currie@usdoj.gov

Dated: July 31, 2024

United States District Court
Eastern District of Michigan

James C. McKee, #31679-171,

                    Petitioner,

              -vs-

Eric Rardin,

                    Respondent.

Case No. 24-cv-11154

Honorable Denise Page Hood
Mag. Judge Patricia T. Morris

---

## Brief in Support of Response to Petition for Writ of Habeas Corpus

---

## Issue

Should McKee's petition for a writ of habeas corpus under 28 U.S.C. § 2241 be dismissed for lack of jurisdiction or, alternatively, denied on the merits because the Bureau of Prisons has complied with its obligations under the First Step Act?

# Table of Contents

Table of Authorities ................................................................................ iii

Background ........................................................................................... 1

Argument .............................................................................................. 4

   I.  The petition should be dismissed for lack of jurisdiction because
      McKee challenges the place—and not the fact or duration—of his
      confinement. ................................................................................ 4

  II. BOP has not violated its obligations under the First Step Act. ........ 6

Conclusion ........................................................................................... 9

Certificate of Service ............................................................................ 10

# Table of Authorities

**Cases**

*Doe v. Fed. Bureau of Prisons*, No. 23 CIV. 5965, 2024 WL 455309
(S.D.N.Y. Feb. 5, 2024) ...........................................................................8

*Gant v. King*, No. 23-CV-1766, 2023 WL 6910771
(D. Minn. Oct. 19, 2023) .........................................................................6

*Leavitt v. Warden*, No. 24-cv-134, 2024 WL 3416457 (D.N.H. July 1,
2024), *report and recommendation adopted sub nom.*, 2024 WL
3411097 (D.N.H. July 15, 2024) ..............................................................9

*Preiser v. Rodriquez*, 411 U.S. 475 (1973)...............................................5

*United States v. Sanders*, No. 19-20191, 2021 WL 510195
(E.D. Mich. Feb. 11, 2021) .......................................................................5

*Vendrell-Santiago v. Rivers*, No. 3:22-cv-2261, 2023 WL 11760821
(N.D. Tex. Oct. 13, 2023, *report and recommendation adopted*,
2024 WL 2702665 (N.D. Tex. May 24, 2024) ..........................................5

*Wessels v. Houden*, No. 23-cv-1266 (WMW/ECW), 2023 WL 7169154
(D. Minn. June 22, 2023), *report and recommendation adopted*,
2023 WL 7168926 (D. Minn. Oct. 31, 2023)............................................5

*Wilson v. Williams*, 961 F.3d 829 (6th Cir. 2020)....................................5

*Woodley v. Warden*, No. 24-3053, 2024 WL 2260904
(D. Kan. May 15, 2024)............................................................................8

**Statutes**

18 U.S.C. § 3621(b).....................................................................................7

18 U.S.C. § 3624(c)(1) ................................................................................7

18 U.S.C. § 3624(g)(11)...........................................................................4, 7

18 U.S.C. § 3624(g)(3)................................................................2

18 U.S.C. § 3632(a).....................................................................1

18 U.S.C. § 3632(d)(4)............................................................1, 6

18 U.S.C. § 3632(d)(4)(A)..........................................................1

28 U.S.C. § 2241 ................................................................4, 5, 6

28 U.S.C. § 2241(c)(3) ...............................................................5

## Regulations

28 C.F.R. § 523.44(c)................................................................2

28 C.F.R. § 523.44(d)...............................................................2

## Background

James McKee was convicted in the United States District Court for the District of South Carolina of a conspiracy to possess with intent to distribute and distribution of methamphetamine, and the district court sentenced him to 132 months in prison. (Judgment, D.S.C. Case No. 14-cr-00324, ECF No. 181, pp. 1–2; Exhibit 1, Sanborn Decl. ¶ 4). McKee is currently housed at FCI Milan. (Exhibit 1, Sanborn Decl. ¶ 4). His projected release date via the First Step Act (FSA) is March 15, 2025. (Exhibit 1, Sanborn Decl. ¶ 4 & Att. 2).

As part of the FSA, Congress directed the Attorney General to establish a system for inmates to participate in evidence-based recidivism-reduction programs and productive activities to earn time credits toward early transfer to supervised release or prerelease custody. *See* 18 U.S.C. § 3632(a). Eligible inmates can earn 10 time credits "for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities" and an extra 5 time credits during that period if certain other requirements are met. *Id*., § 3632(d)(4)(A). A maximum of 365 time credits may be applied towards an inmate's early transfer to supervised release—functionally

shortening their sentence by up to one year. *Id.*, § 3624(g)(3); 28 C.F.R.
§ 523.44(d). Eligible inmates may have any remaining time credits
applied towards early transfer to prerelease custody, either in a
residential reentry center or home confinement. 28 C.F.R. § 523.44(c).

As of August 6, 2023, McKee had earned 365 time credits toward
early release and 175 time credits toward early transfer to prerelease
custody. (Exhibit 1, Sanborn Decl. ¶ 8 & Att. 3). Accordingly, FCI Milan
submitted a referral to the Residential Reentry Manager (RRM) at the
Raleigh Residential Reentry Office, which covers the two reentry
centers located in McKee's planned release area in South Carolina.
(Exhibit 1, Sanborn Decl. ¶ 8 & Att. 3). FCI Milan recommended that
McKee be given a reentry center placement date of September 22, 2023,
given his earned time credits as of the referral. (Exhibit 1, Sanborn
Decl. ¶ 8 & Att. 3). FCI Milan explained that such placement "will
assist inmate McKee in obtaining employment and readjusting to
community living" and noted that McKee "is currently homeless."
(Exhibit 1, Sanborn Decl. Att. 3).

Unfortunately, the RRM could not accommodate the recommended
placement date because "there was no bedspace available for [McKee] in

2

either of the [reentry centers] in his release area of South Carolina until September 6, 2024." (Exhibit 1, Sanborn Decl. ¶ 10). And the RRM determined that McKee "is not appropriate for direct home confinement placement given his preceding homelessness, the length of time he has been incarcerated, his disciplinary history, and his history of substance abuse." (Exhibit 1, Sanborn Decl. ¶ 10). Instead, McKee "needs to begin in the structured environment of [a reentry center] to aid him in transition from prison to the community." (Exhibit 1, Sanborn Decl. ¶ 10). Accordingly, McKee was given the earliest possible placement date—September 6, 2024—at a reentry center in his release area. (Exhibit 1, Sanborn Decl. ¶ 9).

As the RRM explains, inmates are ordinarily placed in reentry centers in the jurisdiction where they were sentenced. "Prerelease custody placement facilitates the transition from prison to community by assisting an inmate with job placement, treatment services, etc.," and "it would be illogical to have inmates establish those things outside the jurisdiction of their anticipated supervised release." (Exhibit 1, Sanborn Decl. ¶ 7). Like so many things, placement at a reentry center "is subject to resource availability." (Exhibit 1, Sanborn Decl. ¶ 9).

Despite the language in 18 U.S.C. § 3624(g)(11), which requires all eligible prisoners to be accommodated, "BOP does not currently have unlimited prerelease bedspace." (Exhibit 1, Sanborn Decl. ¶ 6). Indeed, BOP depends on contracts with reentry centers, and the reentry centers have to agree to accept an inmate's placement "while operating within an approved annual budget," so BOP is ultimately "at the mercy of community resources and community support." (Exhibit 1, Sanborn Decl. ¶ 6).

McKee seeks relief under 28 U.S.C. § 2241, claiming that his placement in prerelease custody has been significantly delayed and that the BOP has failed to comply with its obligations under the FSA. (ECF No. 4-1, Petition, PageID.43–60). Meanwhile, McKee is still slotted to be placed at a reentry center in his release area starting on September 6, just over a month from now. (Exhibit 1, Sanborn Decl. ¶ 9 & Att. 4).

## Argument

### I.  The petition should be dismissed for lack of jurisdiction because McKee challenges the place—and not the fact or duration—of his confinement.

Habeas corpus is the proper vehicle when a prisoner is challenging the fact or duration of his confinement and is seeking an immediate or

speedier release from custody. *See* 28 U.S.C. § 2241(c)(3). *Preiser v. Rodriquez*, 411 U.S. 475, 490 (1973). But "claims seeking relief in the form of improvement of prison conditions or transfer to another facility are not properly brought under § 2241" and should instead be pursued in a civil rights action. *Wilson v. Williams*, 961 F.3d 829, 838 (6th Cir. 2020); *see also United States v. Sanders*, No. 19-20191, 2021 WL 510195, at *2 (E.D. Mich. Feb. 11, 2021). Thus, when a prisoner seeks "a transfer to prerelease custody," there is "no habeas jurisdiction." *Wessels v. Houden*, No. 23-cv-1266 (WMW/ECW), 2023 WL 7169154, at *1 (D. Minn. June 22, 2023), *report and recommendation adopted*, 2023 WL 7168926 (D. Minn. Oct. 31, 2023).

Here, McKee is not seeking immediate or earlier release from his custodial sentence, but instead challenges the delay in transferring him to prerelease custody to serve out the remainder of his custodial sentence in a residential reentry center. Because McKee has not raised a claim that is cognizable under § 2241, this Court should dismiss it for lack of jurisdiction. *See, e.g., Vendrell-Santiago v. Rivers*, No. 3:22-cv-2261, 2023 WL 11760821, at *2 (N.D. Tex. Oct. 13, 2023, *report and recommendation adopted*, 2024 WL 2702665 (N.D. Tex. May 24, 2024)

(finding jurisdiction lacking under § 2241 because the prisoner's "request for immediate placement in pre-release custody challenges a placement decision *not* the fact or duration of his confinement"); *see also Gant v. King*, No. 23-CV-1766, 2023 WL 6910771, at *3 (D. Minn. Oct. 19, 2023) ("Gant's claim that Section 3632(d)(4) requires that his FSA time credits apply toward his prerelease custody addresses the place of his detention.").

## II.    BOP has not violated its obligations under the First Step Act.

Even if McKee's claim could be brought under § 2241, his petition would fail on the merits because the FSA does not create an entitlement to prerelease placement in a reentry center or home confinement for the maximum amount of time for which they are eligible. Here, because McKee earned more than 365 days of time credits under the FSA, the BOP moved up his projected release date by 365 days, which is the maximum authorized by statute. (Exhibit 1, Sanborn Decl. ¶¶ 4, 8). BOP then applied the remainder of McKee's earned credits under the FSA toward his eligibility for placement in prerelease custody. Despite his eligibility for such transfer, McKee's placement was delayed due to a bed shortage at both of the reentry centers in his release area. (Exhibit

1, Sanborn Decl. ¶ 9).

This resource scarcity in the community is unfortunate. However, BOP has not failed to fulfill its obligations. Statutes are interpreted as a whole. Although 18 U.S.C. § 3624(g)(11) requires BOP to "ensure there is sufficient prerelease custody capacity to accommodate all eligible prisoners," another subsection, 18 U.S.C. § 3624(c)(1), states that prerelease custody is required only "to the extent practical," and the conditions of prerelease custody must provide "a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." In addition, under 18 U.S.C. § 3621(b), BOP has broad discretion concerning the place of confinement, and BOP's ability to designate or transfer prisoners to certain places of confinement is, as expressed by statute, "subject to bed availability." (*See also* Exhibit 1, Sanborn Decl. ¶ 9).

Here, BOP and the RRM have sensibly determined that a "reasonable opportunity" for McKee to adjust and prepare for a successful transition into the community is at a reentry center in the geographic area of his anticipated jurisdiction of supervised release. Efforts to facilitate a successful transition in some other geographic

area—e.g., employment, treatment for mental health or substance abuse, and relationships within the community—would indeed be "illogical." (Exhibit 1, Sanborn Decl. ¶ 7). And given McKee's apparent homelessness status, home confinement is not a practical alternative and would effectively result in his release from custody before he is eligible, which the FSA does not permit.

McKee points to unpublished decisions from other districts, interpreting the BOP's obligations to be absolute. *See Woodley v. Warden*, No. 24-3053, 2024 WL 2260904, at *4 (D. Kan. May 15, 2024) (granting the petition "because the BOP's failure to transfer petitioner to prerelease custody violates federal law"); *Doe v. Fed. Bureau of Prisons*, No. 23 CIV. 5965, 2024 WL 455309, at *4 (S.D.N.Y. Feb. 5, 2024) (concluding that the FSA "does not afford the BOP discretion to not transfer an eligible individual to prerelease custody"). Those decisions, however, are unpersuasive and should not be followed because the statute, as a whole, recognizes that there are practical limits on BOP's ability to place prisoners in prerelease custody and ensure that such placements afford a reasonable opportunity to transition into the community. "Section 3624(c), in stating that

8

prerelease custody is required only 'to the extent practicable,' makes it clear that prerelease custody is not guaranteed to anyone." *Leavitt v. Warden*, No. 24-cv-134, 2024 WL 3416457, at *3 (D.N.H. July 1, 2024) (internal quotation marks omitted), *report and recommendation adopted sub nom.*, 2024 WL 3411097 (D.N.H. July 15, 2024).

## Conclusion

Therefore, McKee's petition for a writ of habeas corpus should be dismissed for lack of jurisdiction or, alternatively, denied on the merits.

Respectfully submitted,

Dawn N. Ison
United States Attorney

s/ *Jessica V. Currie*
Jessica V. Currie
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9531
jessica.currie@usdoj.gov

Dated: July 31, 2024

## Certificate of Service

I certify that on July 31, 2024, I electronically filed the Response to Petition for Writ of Habeas Corpus and Brief in Support, with the Clerk of the Court using the ECF system and that an employee of the U.S. Attorney's office mailed a copy via the United States Postal Service to the following non-ECF participant:

> James C. McKee, Reg. #31679-171
> FCI Milan
> Federal Correctional Institution
> P.O. Box 1000
> Milan, MI  48160

> /s/ Jessica V. Currie
> Assistant United States Attorney

10